```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     OCALA DIVISION
```

STEVEN PADRON,

              Plaintiff,

vs.                            Case No. 5:11-cv-663-Oc-29TBS

OLGA GRIJALES, P.V. DAVILA, GILBERTO URRISTE, TAMYRA JARVIS, and FNU BECHTOLD,

              Defendants.
_____

## OPINION AND ORDER

### I. Status

Plaintiff, who is incarcerated, has pending before the Court a Civil Rights Complaint pursuant to 28 U.S.C. § 1331 or § 1346 with attached exhibits (Doc. #1, Complaint), which was filed on December 8, 2011. Liberally construed, the Complaint alleges an Eighth Amendment claim. See generally Complaint. More specifically, Plaintiff contends that he requires surgery to repair his ACL and medial meniscus, and Defendants' failure to provide him with the surgery constitutes deliberate indifference to his serious medical need. Id. at 10-11. As relief, Plaintiff seeks compensatory and punitive damages, as well an injunction directing Defendants to provide him with the recommended knee surgery. Id. at 13.

Pending before the Court is Defendants' Motion to Dismiss, And Alternatively, Motion for Summary Judgment (Doc. #10, Motion).

Defendants submit the following exhibits in support of their Motion: Sentry Printout (Exh. 1); Declaration and Certification of Records by Dr. Ivan Negron (Exh. 2); Medical Records of Steven Padron (Exh. 3); InterQual, 2011 Procedures Adult Criteria, Arthoscopically Assisted Surgery, Knee, Reconstruction/Repair of ACL Injury (Exh. 4); InterQual, 2011 Procedures Adult Criteria, Arthoscopically Assisted Surgery, Knee, Reconstruction/Repair of Stable Meniscal Tear (Exh. 5); and, Declaration of Dr. Olga Granjales (Exh. 6).  Plaintiff filed a response to the Motion (Doc. #11, Response).  Plaintiff's Response attached the following exhibits: Consultation Request (Pl. Exh. 1); Plaintiff's Medical Records (Pl. Exh. 2); duplicate of Defendants' Exhibit 5 (Pl. Exh. 3); duplicate of Defendants' Exhibit 4 (Pl. Exh. 4); and a 2009 copyrighted article from the American Academy of Orthopedic Surgeons entitled "ACL Injury: Does it Require Surgery?" (Pl. Exh. 6).  In an abundance of caution, the Court duly advised Plaintiff that it was construing the Motion as a motion for summary judgment, apprised Plaintiff of the tenets of Rule 56, and afforded Plaintiff an opportunity to file a supplemental response.  See November 16, 2012 Order (Doc. #13).  Plaintiff elected not to file a supplemental response.  See generally docket.  This matter is ripe for review.

## II. Applicable Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Coward, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. A1 Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

If the moving party meets its burden of production, the non-moving party "must present evidence beyond the pleadings that shows a reasonable jury could find in its favor to avoid the entry of summary judgment." Bell v. Sec'y, Fla. Dep't of Corr., NO. 12-11025, 2012 WL 4465268 (11th Cir. Sept. 27, 2012)(citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1301 (11th Cir. 2009); see also Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc.,

181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Conclusory allegations based on subjective beliefs are not sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)). In the summary judgment

context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III. Finding of Facts and Conclusions of Law

#### A. Facts

The following facts are undisputed by the parties. Plaintiff, Steven Pardon ("Plaintiff" or "Padron") is a federal inmate confined at the Federal Correctional Complex, Low, located in Coleman, Florida "Coleman"). Complaint at 1-2; Motion 1, Exh. 1. "Sometime in 2009," while playing tennis in the "Rec Yard," Padron twisted his knee. Complaint at 9. On July 20, 2009, Padron presented himself to the Coleman medical department complaining of left knee pain "since 2003," and was examined by Defendant Urriste. Exh. 3 (Doc. #10-1) at 30. Upon examination, Urriste noted that Plaintiff had full range of motion in his knee but also had swelling, inflammation, and ligament laxity. Id. at 31. Urriste ordered a magnetic resonance image ("MRI") of the knee. Id. Plaintiff states his pain "continued unabated" while he waited for the MRI. Complaint at 9. On November 17, 2009, Plaintiff had an MRI. Exh. 3 at 27. The MRI revealed "tear of the ACL along its femoral insertion; tear of the posterior horn of medial meniscus, extending to both its inferior and superior articular surfaces." Id. Plaintiff claims that, during the four months following the MRI, he "continued to experience significant pain in [his] knee

whenever he walked or stood" and he made an appointment to see Urriste. Complaint at 10. On March 22, 2010, Urriste examined Plaintiff and noted that Plaintiff still had swelling in his knee and the laxity of the ligament was worsening. Exh. 3 at 27. During the examination, Plaintiff advised Urriste that physical activity exacerbated his condition and rest relieved it. Id. at 26. Urriste recommended that Plaintiff be seen for an orthopedic consultation for possible surgery. Id.

On April 27, 2010, Padron was examined by an orthopedic surgeon. Id. at 12. The orthopedic surgeon noted "arthroscopy left knee meniscectomy possible ACL repair." Id. On July 12, 2012, Plaintiff presented himself to medical with "concern about surgery for left knee" and was examined by Defendant Urriste. Id. at 22. Although Plaintiff claims that he was "in great pain," on this date, Complaint at 10, ¶14, the medical notes indicate that Padron appeared "well," "alert and oriented," and, did not appear "in pain." Exh. 3 at 23. Upon examination, Urriste noted that the "laxity of ligament" has "not improved" and requested Plaintiff be scheduled for "orthopedic surgery" "for left knee arthroscopy, possible hemisectomy and ACL repair." Id. Plaintiff further was advised to "follow-up at sick call as needed." Id.

On July 14, 2010, "the Utilization Review Committee reviewed the consultant's report along with [Padron's] medical records and disapproved the surgical procedure." Response to Administrative

Remedy No. 608153-A1, Doc. #1 at 23. The Committee "determined that conservative treatment was appropriate at that time." Id. As explained by Dr. Ivan Negron,[1] "the repair of a chronic anterior cruciate ligament and meniscal tear is an elective procedure." Exh. 2 (Doc. #10-1) at 8, ¶5. "The determination as to when, or if, surgery is necessary is based upon the functional stability of the knee." Id.

To assist the Bureau of Prisons in determining whether surgery is medically indicted, the Bureau relies upon the "criteria set forth by InterQual." Exh. 2 (Doc. #10-1) at 9, ¶12. "InterQual provides evidence based clinical support to multiple groups including hospitals and health plans throughout the country." Id. Based upon InterQual criteria, the "repair of an anterior cruciate ligament [ACL] is determined by both a history of the knee giving way, and grade II/III instability." Id. at 10, ¶14. Surgery for a meniscal tear "is medically indicated when two of the following are shown: 1. effusion; 2. joint line tenderness; 3. pain with flexion and rotation; and 4. the knee giving way." Id., ¶15. Based upon the examination of Plaintiff and Plaintiff's reports to medical staff, "there is no indication that [Plaintiff's] knee has

---

[1] Dr. Negron is currently employed by the Federal Bureau of Prisons as the Southeast Region Medical Asset Support Team Physician ("MAST"). Exh. 2, ¶1 (Doc. #10-1 at 7). As a MAST Physician, his "primary responsibility is to assist institutions with clinical, administrative and technical support with the Health Services Department." Id.

been giving way during the course of his treatment" to necessitate surgical repair of the ACL. Id., ¶14. Similarly, Plaintiff only presented with one of the four conditions, effusion, to warrant surgery for his meniscal tear. Id., ¶15. According to Plaintiff's medical records, Plaintiff "retained full range of motion, and both inactive and passive motion in the knee" which "indicates the knee was stable . . . ." Id. at 8, ¶6. Plaintiff "never complained of instability, nor did he complain of his knee locking which would have been an indicator for the meniscus tear interfering with the motion of the knee." Id. at 9, ¶9. Based upon the examinations of Plaintiff, Dr. Olga Grajales, the Clinical Director at Coleman, determined that "surgical intervention was not medically indicated." Exh. 4 at ¶4 (Doc. #10-1 at 41). According to Dr. Negron, who was requested by the Federal Bureau of Prisons to review the care provided to Plaintiff, neither of Padron's medical conditions "meet the required criteria for elective repair." Exh. 2 at ¶16.

On December 29, 2010, Padron "did not show up for a [a] sick call appointment." Exh. 3 at 21. Padron did not seek medical treatment for his knee again until January 27, 2011, when he complained that he has pain in his left knee and it "continues popping up constantly." Exh. 3 at 18. Plaintiff described his pain as "aching/crushing" and measuring an "8" on the pain scale. Id. Upon examination, Defendant Urriste noted Padron had full

range of motion" with "no edema on [the] left knee." Id. at 19. At the January 27, 2011 examination, Urriste noted in the record that Padron did not appear "in pain" or "in distress" but concluded that the "laxity of ligament" had "not improved/same." Id. Urriste prescribed Meloxicam to Plaintiff (15 mg daily for 120 days) and counseled him on a "Plan of Care" and "Exercise." Id. Meloxicam is a "non-steroid anti-inflammatory drug [used] to reduce swelling and treat pain." Affidavit of Dr. Negron (Doc. #10-1 at 7-10), ¶10.

Plaintiff did not seek further medical care until April 26, 2011, when he accessed sick call for pain in his right foot. Exh. 3 at 15. Plaintiff was examined by Defendant Urriste and assessed with "ankle, foot-pain in joint." Id. at 17. Urriste again prescribed Meloxicam for Plaintiff. Id. The next day, Urriste referred Plaintiff to a a "Rheuma/Ortho Clinic" for multiple chronic conditions. Id. at 13.

**B. Discussion**

Because Plaintiff is incarcerated, his constitutional claims based on inadequate medical care arise under the Eighth Amendment. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted). The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. In order to state a claim for a violation under the Eighth Amendment, a plaintiff-prisoner must allege "acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Hudson v. McMillan, 503 U.S. 1, 9 (1992)(opining that a prisoner must demonstrate a "serious" medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care. . . ."). This showing requires a plaintiff to satisfy both an objective and a subjective inquiry. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

First, a plaintiff must show that he had an "objectively serious medical need." Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the

risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)).  "A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010)(citing Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991)). A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference.  Nor does a simple difference in medical opinion."). "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. Jan. 22, 2008)(quoting Harris, 941 F.2d at 1504).  For example, the Eleventh Circuit previously found "that a doctor's failure to administer stronger medication . . . pending the arrival

-11-

of [an] ambulance ... [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)). Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

"Deliberate indifference" includes "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem," where "the delay does seriously exacerbate the medical problem," and where "the delay is medically unjustified." Harper v. Lawrence Cnty., 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting Taylor, 221 F.3d 1254, at 1259 (11th Cir. 2000). See also McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). A delay of even hours may be deliberate indifference given the "reason for the delay and the nature of the medical need." McElligott, 182 F.3d at 1255. However, "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds Hope v. Pelzar, 536 U.S. 730 (2002). "Self-serving statements by a plaintiff do not create a

-12-

question of fact in the face of contradictory, contemporaneously created medical records." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010)(citations omitted).

Here, the record evidence demonstrates that Plaintiff was provided with medical treatment for his knee pain. Plaintiff regularly was examined by prison medical staff and was diagnosed by Defendant Urriste with "ACLS deficiency," Exh. 3 at 31, and possible "ACLS tear/medical meniscus tear" in his left knee. Id. at 27. Plaintiff was referred for testing and underwent an MRI to confirm Dr. Urriste's diagnosis. After review of the MRI report and further complaints by Plaintiff, Dr. Urriste requested that Plaintiff be evaluated by an outside orthopedic surgeon. Prison medical staff sent the surgeon's recommendation to the Utilization Review Committee. After, surgery was denied by the Utilization Review Committee, medical staff continued to examine Plaintiff, prescribe Plaintiff with anti-inflammatory medication, and provide Plaintiff with recommended strength exercises to rehabilitate his knee.

Further, to the extent that Plaintiff contends that the delay to provide him with the recommended surgery constitutes deliberate indifference, Plaintiff has not provided the Court with any verifiable evidence that the failure to date to provide the surgery has caused a detrimental effect on his left knee. In the absence of such evidence, Plaintiff fails to raise a genuine issue of an

essential element of his claim. Here the undisputed record evidence demonstrates that the Utilization Committee determined that Plaintiff's symptoms did not meet the suggested criteria for surgical intervention.[2] At most, whether Plaintiff requires surgical intervention for his left knee constitutes a difference of medical opinion.

Consequently, the Court finds that Plaintiff has failed to meet his burden to demonstrate that there is a genuine issue of material fact about whether any of the Defendants were deliberately indifferent to Plaintiff's serious medical needs, or whether the decision to delay surgical intervention and opt for a more conservative course of treatment had any detrimental effect on Plaintiff's medical condition to rise to an Eighth Amendment claim. Consequently, the Court finds that Defendants are entitled to summary judgment as a matter of law.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' Motion to Dismiss, And Alternatively, Motion for Summary Judgment (Doc. #10) is **GRANTED** as to the alternative motion for summary judgement.

---

[2] Obviously, Plaintiff's clinical findings could change in the future. As noted in Dr. Negron's Affidavit "If Mr. Padron's condition worsens, the decision to perform surgery will be revisited . . . ." Exh. 2 (Doc. #10-1) at 10. It is unclear from the record before the Court whether Plaintiff's condition has improved, remains the same, or has deteriorated.

    2.    The Clerk shall enter judgment accordingly, terminate any pending motions and deadlines, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __9th__ day of January, 2013.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record